## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VARILEASE FINANCE, INC., and<br>VFI KR SPE I LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| FCS ADVISORS, LLC d/b/a<br>BREVET CAPITAL ADVISORS, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Varilease Finance, Inc. and VFI KR SPE I LLC, by their undersigned counsel, state the following for their Complaint against FCS Advisors, LLC d/b/a Brevet Capital Advisors:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Varilease Finance, Inc. ("Varilease") is a Michigan corporation with its principal place of business located in Salt Lake City, Utah.

2. Plaintiff VFI KR SPE I LLC ("VFI SPE") is a Delaware limited liability company with its principal place of business located in Salt Lake City, Utah (VFI SPE and Varilease are collectively referred to herein as "Plaintiffs").

3. VFI SPE's sole member is Varilease, which is deemed to be a citizen of Michigan and Utah.

4. Upon information and belief, Defendant FCS Advisors, LLC d/b/a Brevet Capital Advisors ("Defendant" or "Brevet") is a Delaware limited liability company with its principal place of business located in New York, New York.

5. Upon information and belief, Defendant has one member, which is a Delaware limited liability company ("Entity 1").

1

6.      Upon information and belief, Entity 1 has two individual members, both of whom are citizens of New York, and one entity-member, which is a Delaware limited liability company ("Entity 2").

7.      Upon information and belief, Entity 2 has two individual members, one of whom is a citizen of New York and one of whom is a citizen of New Jersey, and one entity-member, which is a Delaware limited liability company ("Entity 3").

8.      Upon information and belief, Entity 3 has two members, one of whom is a citizen of New York and one of whom is a citizen of New Jersey.

9.      This is an action for declaratory judgment relating to the priority of Plaintiffs' all-asset lien on certain assets of third-party Intercontinental Capital Group, Inc. ("ICG"), which lien Defendant incorrectly believes is subordinate to Defendant's lien on ICG's same assets.

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because of complete diversity of citizenship between Plaintiffs and Defendant and because the amount in controversy exceeds $75,000.00.

11.     This Court has personal jurisdiction over Defendant because, among other things, Defendant maintains its place of business in the State of New York and a substantial part of the events or omissions giving rise to the claim contained herein occurred in this district.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendant is subject to this Court's personal jurisdiction.

13.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## GENERAL ALLEGATIONS

**The Varilease/ICG MLA and Plaintiffs' Lawsuit Against ICG**

14.     Plaintiffs in this matter are also the plaintiffs in the suit styled *Varilease Finance, Inc. and VFI KR SPE I LLC, v. Intercontinental Capital Group, Inc. and Dustin A. Dimisa,* Case No. 2:22-cv-12875, in the United States District Court for the Eastern District of Michigan, Southern Division (the "Michigan Action").

15.     Varilease and ICG entered into a Master Lease Agreement (the "MLA," which includes certain Schedules, Installation Certificates and other ancillary agreements), pursuant to which ICG leased certain equipment from Varilease (the "MLA Assets"). *See* **Exhibit A**. Varilease later assigned each of the Schedules, incorporating the MLA, to VFI SPE. *See* **Exhibit B**.

16.     The MLA between Varilease and ICG was executed on June 28, 2018.

17.     The Michigan Action was filed by Plaintiffs to enforce the MLA as it relates to Schedule No. 03 dated June 25, 2021.

18.     The MLA was intended to be a true lease of the MLA Assets to ICG. *See* Exhibit A (Master Lease Agreement) at Section 19(m). However, in the event the MLA was not deemed to be a true lease, but instead a sale, consignment or other transaction, the last paragraph of each of the Schedules contained the grant of a security interest by ICG in favor of Plaintiffs, in the MLA Assets, as collateral security for the obligations owing under the MLA. *See* Exhibit A (Schedules).

19.     On June 19, 2018, July 31, 2018 and June 7, 2021, Plaintiffs filed UCC Financing Statements which referenced each of the MLA Assets described in the Schedules and the security interests granted to Plaintiffs. *See* **Exhibit C**.

20.     Under Section 2(b) of the Master Lease Agreement, ICG additionally granted Plaintiffs a security interest in all of its assets, as additional collateral security for all obligations owing under the MLA (the "All-Asset Security Interest"). Specifically, Section 2(b) stated, in part:

> …during the term of the Lease, in any jurisdiction where the Uniform Commercial Code is in effect, Lessee grants to Lessor a security interest in any and all goods, chattels, fixtures, equipment, assets, accounts receivable, contract rights, general intangibles and property of every kind wherever located in which Lessee has any interest and proceeds thereof, and agrees that any security interest created by this Master Agreement secures any and all obligations of Lessee and those of any affiliate of Lessee to Lessor whether now in existence and/or to come into existence.

Exhibit A (Master Lease Agreement) Section 2(b).

21.     In accordance with Section 2(b) of the MLA, on May 14, 2020, VFI SPE filed a UCC Financing Statement with respect to the All-Asset Security Interest granted under the MLA, specifically as to "[a]ny and all goods, chattels, fixtures, equipment, assets, accounts receivable, contract rights, general intangibles, and property of every kind wherever located in which Debtor has any interest and proceeds thereof" (the "All-Asset Financing Statement"). *See* **Exhibit D**.

22.     The assets subject to the All-Asset Security Interest (the "All-Asset Lien Assets") included tax refunds due to Defendant from the Internal Revenue Service and other state and/or federal governmental agencies resulting from Employee Retention Tax Credits made available under the Internal Revenue Code and/or other government legislation, including those totaling approximately $33,000,000 and the proceeds thereof (the "ERTC Tax Refund").

23.     ICG (and the guarantor of the MLA, "Guarantor") later breached the MLA and the Guaranty thereof executed by the Guarantor and currently owe Plaintiffs a minimum of $5,262,185.35.

24.    On November 17, 2022, Plaintiffs sent ICG and the Guarantor under the MLA a written notice demanding that they turn over possession of the MLA Assets subject to Schedule No. 03, as well as the All-Asset Lien Assets, which included rights with respect to the ERTC Tax Refunds, together with any proceeds thereof.

25.    ICG failed to do so, necessitating the Michigan Action.

26.    The Michigan Action asserted claims for (a) breach of ICG's obligations under the MLA; (b) breach of Guarantor's obligations under the Guaranty; (c) specific performance for the return of the MLA Assets; (d) foreclosure of Plaintiffs' security interest in the MLA Assets and in the All-Asset Lien Assets; and (e) claim and delivery of the MLA Assets and the All-Asset Lien Assets.

27.    The Michigan Action was resolved pursuant to a settlement agreement entered into between ICG, the Guarantor and Plaintiffs.

28.    In conjunction with the settlement of the Michigan Action, an *Order Granting Plaintiffs' Motion for Order Confirming Plaintiffs' Security Interest in Tax Refunds* was entered on January 18, 2024. *See* **Exhibit E.** In it, the Court held that "Plaintiffs' all-asset security interest attaches to, and is enforceable against, any tax refund monies to which ICG may be entitled, including any tax refund monies attributable to ICG's Employee Retention Tax Credit." *Id.,* paragraph 3.

**Defendant's claim to the assets of ICG, including the ERTC Tax Refund**

29.    As stated, the All-Asset Lien Assets include all assets of ICG, including the ERTC Tax Refund.

30.    Approximately 18 months after Plaintiffs' lien on the assets of ICG, including the ERTC Tax Refund, was received and perfected on May 14, 2020, Defendant alleges to have loaned

money to ICG, allegedly secured by an all-asset lien, including the same ERTC Tax Refund, applied for under a COVID-19 relief program.

31.     Defendant filed a UCC Financing Statement on January 18, 2022, claiming an interest in the assets of ICG, including in "ERC Refunds." *See* **Exhibit F.**

32.     Accordingly, as part of this alleged loan transaction, Defendant claims a lien on the same assets and ERTC Tax Refund secured by Plaintiffs' prior All-Asset Security Interest and, upon information and belief, has submitted a request for the IRS to pay any ERTC Tax Refund due, to ICG.

33.     Defendant has refused, despite the foregoing, to acknowledge Plaintiffs' superior lien in ICG's assets and in the ERTC Tax Refund.

34.     Thus, this action is necessary to obtain an order declaring Plaintiffs to hold the first lien position in all assets of ICG, including in the ERTC Tax Refund, superior to that claimed by Defendant.

## COUNT I – DECLARATORY JUDGMENT

35.     Plaintiffs incorporate the preceding paragraphs by reference as if fully stated herein.

36.     There is an actual and substantial controversy between Plaintiffs and Defendant as to whether Plaintiffs' lien on all assets of ICG, including in the ERTC Tax Refund, is superior to the lien claimed by Defendant.

37.     Because Plaintiffs and Defendant claim a competing security interest, lien or similar right to receive a payment in relation to the assets of ICG, including in the ERTC Tax Refund, they have adverse legal interests regarding this dispute.

38.     Defendant's refusal to recognize Plaintiffs' superior (and earlier) perfected interest in the assets of ICG, including in the ERTC Tax Refund and proceeds thereof, are of sufficient immediacy and reality that this Court should provide the requested declaratory relief.

39.     Plaintiffs are entitled to a declaration that Plaintiffs have a first lien on the assets of ICG, including in the ERTC Tax Refund and all proceeds related thereto, superior to Defendant's claimed lien on the same.

WHEREFORE, Plaintiffs respectfully request a judgment against Defendant:

a.   Declaring that Plaintiffs have a first lien on all assets of ICG, including in the ERTC Tax Refund and all proceeds related thereto, superior to Defendant's claimed lien on the same; and

b.   Granting such other and further relief for Plaintiffs as the Court deems just and proper.

Dated: January 31, 2025
       New York, New York

Respectfully Submitted:

GOETZ PLATZER LLP

/s/Scott D. Simon
Scott D. Simon
Howard M. Jaslow
One Penn Plaza, Suite 3100
New York, New York 10119
(212) 695-8100
ssimon@goetzplatzer.com
hjaslow@goetzplatzer.com

and

TAFT STETTINIUS & HOLLISTER LLP
Jay L. Welford (P34471)
David S. McDaniel (P56994)
Molly R. Moss (P84589)
[*Pro Hac Vice Applications Pending*]
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
(248) 351-3000
jwelford@taftlaw.com
dmcdaniel@taftlaw.com
mmoss@taftlaw.com

*Attorneys for Plaintiffs Varilease Finance, Inc. and VFI KR SPE I LLC*